IFOPO SAIPISA and
IFOPO FAMILY, Appellants

v.

SA SIATU'U, FIAAOGA SIATU'U,
SAPINI SIATU'U and the children of
SIATU'U, Appellees

High Court of American Samoa
Appellate Division

AP No. 12-89

July 28, 1989

24

Before REES, Associate Justice, CANBY,* Acting Associate Justice,

---

\* Honorable William C. Canby, Jr., Judge, United States Court of Appeals for the Ninth Circuit, serving by designation of the Secretary of the Interior.

THOMPSON,[**] Acting Associate Justice, OLO, Associate Judge, and VAIVAO, Associate Judge.

Counsel: For Appellants, Tautai A.F. Fa'alevao
For Appellees, Gata E. Gurr

Per Rees, J.:

Appellant Ifopo sued for eviction of the Siatu'u family from a small piece of land claimed to be communal land of the Ifopo family. The land, however, was registered in 1945 as the individual property of Reverend Peleti Siatu'u, the late father of the appellees. Ifopo claimed that Siatu'u never had any right to register the land and that the registration did not confer title; the Siatu'us responded that their father had bought the land from the father and grandfather of the present Ifopo and registered only what he had purchased.

The trial court held that when land is offered for registration in accordance with A.S.C.A. §§ 37.0101 et seq., anyone who wishes to object on any ground whatever to the registrant's claim of ownership must do so within the statutory sixty-day limit. *Ifopo v. Siatu'u*, LT No. 10-88, 10 A.S.R.2d 66 (1989); *see* A.S.C.A. § 37.0103 (a)-(b). If an objection is lodged within the sixty days, the matter is referred to the High Court for adjudication of the competing claims; if not, the land is registered in the name of the claimant and all other claims of ownership are forever precluded. *Puluti v. Muliufi*, 4 A.S.R. 672 (1965); *Molitui v. Pisa*, 2 A.S.R. 268 (1947).

Appellant urges that for the Court to give such preclusive effect to the registration process amounts to a sort of judicial transfer of the land from the "true" owner to the registered owner. As the trial court observed, however, the registration statute gives anyone who believes himself the owner of land a fair opportunity to present his claim to the court; it then conclusively presumes that anyone who did not avail himself of this opportunity was *not* the true owner of the land.

Appellant urges, however, that in giving effect to the registration statute the trial court failed to take account of the statute prohibiting

---

[**] Honorable David R. Thompson, Judge, United States Court of Appeals for the Ninth Circuit, serving by designation of the Secretary of the Interior.

alienation of communal lands without approval of the Land Commission and the Governor. This prohibition is currently codified as A.S.C.A. § 37.0204, and was formerly contained in 18 A.S.C. §§ 1281-82. In the present case there was no evidence that any sale from Ifopo to Siatuʻu was approved by the Governor and the Land Commission. Appellant urges that the Court must "reconcile" the registration statute with the prohibition on alienation of communal lands, and that the proper reconciliation is to treat the registration by Siatuʻu as null and void unless it should affirmatively appear that his purchase from Ifopo was approved by the Land Commission and the Governor.

The statutory registration process, gave Ifopo or any member of the Ifopo family sixty days in which to urge *any* objection to the proposed registration by Siatuʻu. This would include the objection now urged by Ifopo: that the land was communal and that no sale was approved by the land Commission or the Governor. If such an objection had been made and proved, Siatuʻu would never have been allowed to register the land. Since no objection was made within the specified period, the law now conclusively presumes either that the procedures for alienation of communal land were met or that the land was not communal.

The purpose of requiring such an objection to be made within sixty days of the proposed registration was precisely to relieve the registrant of the burden which appellant now wishes the Court to impose: the burden of disproving the objection by affirmatively proving every fact necessary to establish title after the passage of many years, during which witnesses would tend to die and documents would tend to be lost or destroyed. The registration statute does not ignore or nullify the restriction on alienation, but provides a channel for its orderly administration. Since the statutory scheme effects its own reconciliation of the competing policies, there is no need for the Court to fashion a new and different one by refusing to enforce the registration statute.

Finally, Ifopo urges that the registration was invalid because the required notice was never given. This contention is based partly on the testimony of Ifopo herself (who did not live in American Samoa in 1945) to the effect that neither she nor any member of her family ever learned of the proposed registration, and partly on the absence in the files on the Territorial Registrar of a certificate from the pulenuʻu that the required notice had been given.

27

This contention is easily the most serious of those raised by appellant. If no notice was given, then the central purpose of the registration statute was defeated and due process of law was denied. Courts can and do disregard registrations that are clearly proved to have been procured by fraud, or in which the failure to afford the required notice affirmatively appears in the record of the registration itself. *See, e.g., Faleafine v. Suapilimai*, 7 A.S.R. 2d 108 (1988).

The Territorial Registrar, however, is charged with registering title only when all the statutory procedures have been met, and the Court should not assume that he did not comply with this obligation. As the court observed, that a document should be missing from a file in the Registrar's office is so common as to be an extremely unreliable indicator of whether an event that might have been attested by the document did or did not occur. Nor can the Court conclude that no notice was given simply because a number of witnesses testified that they never saw any notices. The registration statute cannot have the intended effect of affording finality to disputes and security to titles if the Court is prepared to conduct its own *de novo* review of whether there was compliance with the statute in every case where non-compliance is alleged. Rather, the Court must assume ---- and, absent compelling proof to the contrary, must conclude --- that the Registrar recorded a title only after complying with his obligations under the law.

In the present case the trial court correctly refused to look behind a Registrar's certificate of title that had gone unchallenged for over forty years. As the trial court observed,

> [e]ven a casual glance at the [registration statute] . . . would reveal the unmistakable legislative design to secure finality of the registration process. A review of the process some 40 years after the fact must surely be in derogation of that objective. If review could be readily available at any time whatsoever, then any public confidence in the recordation process will disappear and "[the] security of registered land titles would be seriously weakened to the detriment of the Samoan people."

10 A.S.R.2d at 70, quoting *Molitui v. Pisa*, supra, at 270.

Accordingly, we affirm the judgment of the trial court.